UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ZHEJIANG TOPOINT PHOTOVOLTAIC CO, LTD,**<br><br>  Petitioner,<br><br>  v.<br><br>**G&S SOLAR INSTALLERS, LLC,**<br><br>  Respondent. | Civ. No. 19–16578 (KM) (MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

     In 2013, respondent G&S Solar Installers agreed to purchase solar panels from non-party Solergy USA. The contact required the parties to arbitrate disputes arising from the transaction. A dispute eventually arose, and Solergy sold its claim against G&S to petitioner Zhejiang Topoint Photovoltaic Co. ("Topoint"). Topoint had by that time entered bankruptcy in China and opened a corresponding Chapter 15 proceeding in the United States. In connection with the U.S. reorganization, Topoint initiated an adversary proceeding against G&S to recover on the claim that it had purchased from Solergy.

     G&S then moved in the U.S. bankruptcy court for an order enforcing against Topoint the arbitration agreement for which G&S and Solergy had bargained. The bankruptcy judge granted the motion, and the adversary proceeding was referred to arbitration. The arbitrator found in favor of Topoint, as assignee of Solergy, and rendered a final award.

     G&S, in a reversal of its earlier position, now argues that Chinese bankruptcy law stripped the arbitrator of his jurisdiction, because it requires all claims related to a bankruptcy estate to be heard by the domestic court overseeing the reorganization.

Now before the Court is the motion to confirm the arbitration award of Zhejiang Topoint Photovoltaic Co. (DE 22).[1] Also before the Court is G&S Solar Installer's cross-motion to vacate the award. (DE 26). For the following reasons, the motion to confirm the arbitration award is **GRANTED**. The cross-motion to vacate the award is **DENIED**.

## I. BACKGROUND

### A. Facts

Petitioner Zhejiang Topoint Photovoltaic Co., Ltd. ("Topoint"), is a limited-share company organized under the laws of the People's Republic of China, and it has its principal place of business in China. (DE 1 ¶ 3). Topoint manufactures and exports solar panels and other products from China. (DE 1 ¶ 3).

Respondent G&S Solar Installers LLC is a limited liability company organized under the laws of the State of New York and is registered to do business in New York. (DE 1 ¶ 4).

In September 2013, G&S contracted with non-party Solergy USA LLC to purchase Topoint-branded solar panels from Solergy. (DE 1-1 at 1). In connection with the transaction, Solergy prepared an invoice that the parties called "the Panel Quotation," which Solergy and G&S signed on September 3, 2013. (DE 1-1). The Panel Quotation bound G&S to purchase 77,832 solar panels from Solergy, at prices ranging from $135 to $140 per unit, for a total price of $10,850,920. (DE 1-1 at 1). The Panel Quotation contained an arbitration clause:

> <u>Arbitration</u>. Except in the event of Costumer's failure to make timely payments hereunder, all disputes that may arise between the parties under or in connection with this Agreement shall be submitted (together with any counterclaims) to final and binding arbitration heard by a single arbitrator in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association ("AAA") and to be conducted in New York, New York. The prevailing party of any arbitration, action or legal

---

[1] "DE __" refers to the docket entries in this case.

> proceeding shall be entitled to receive from the other party, in addition to any other relief that may be granted, its reasonable attorney's fees, costs, and expenses incurred.

(DE 1-1 at 6 ¶ 19). The Panel Quotation also contained a provision designating that New Jersey law would govern any dispute between the two sides. (DE 1-1 ¶ 20).

G&S ordered enough solar panels to fulfill its contractual obligation. G&S, citing various reasons, refused to pay for $3,268,884.30 worth of panels. (DE 27 ¶ 2).

### B. Procedural History

In December 2013, Topoint was placed into restructuring proceedings in Haining, Zhejiang, China (the "Haining court"). *See In re Zhejiang Topoint Photovoltaic Co., Ltd.*, No. 14-24549 (Bankr. D.N.J.). On July 16, 2014, Topoint filed a corresponding Chapter 15 proceeding in the Bankruptcy Court for the District of New Jersey. *See id.* At the time it entered bankruptcy, Topoint held an account receivable against Solergy. In satisfaction of that debt, Solergy on December 8, 2014 assigned to Topoint its contract rights against G&S. (DE 1-2). That claim became part of Topoint's bankruptcy estate.

On October 28, 2016, Topoint, standing in the shoes of Solergy as assignee, initiated in the bankruptcy court an adversary proceeding against G&S. *See Zhejiang Topoint Photovoltaic Co., Ltd. v. G&S Solar Installer, LLC* (*In re Zhejiang Topoint Photovoltaic Co., Ltd.*), Ch. 15 Case No. 14-24549, Adv. No. 16-1811 (Bank. D.N.J.). The complaint alleged that G&S agreed to purchase, but did not pay for, over $3.2 million worth of Topoint-manufactured solar panels from Solergy. *See id.*

G&S moved to enforce the arbitration agreement contained in the Panel Quotation. Topoint opposed the motion, arguing that the dispute was outside the scope of the parties' agreement. On December 19, 2017, the Hon. Jerrold Poslusny, the bankruptcy court judge overseeing the case, granted the motion and referred the matter to arbitration:

> Here, the arbitration provision is entirely susceptible of an interpretation covering this dispute[.] Topoint argues that the factual underpinnings of their claim arise out of [G&S's] failure to make payments under the terms of the agreement. While [G&S] may not have made timely payments, the one exception to the agreement to arbitrate, that is not the only dispute between the parties. [G&S] asserts that the quality and quantity of the solar panels were not what they were represented to be and that Solergy made representations regarding warranty and suitability of warranty insurance in connection with negotiating the contract that turned out to be untrue. In addition, [G&S] claims that Solergy failed to deliver all of the promised solar panels and were "shorted" by 7,420 panels, which [G&S] had to replace from other sources at higher cost. These initial disputes led to [G&S's] failure to make payment.
>
> Since the crux of the dispute between Solergy and [G&S] is not just failure to make timely payments, it falls within the scope of the parties' agreement to arbitrate in the Panel Quotation/Invoice. Therefore, all of the claims between the parties are subject to arbitration. . . . Therefore, the Motion to Dismiss is granted to allow Topoint to pursue arbitration.

*Zhejiang Topoint Photovoltaic Co., Ltd. v. G&S Solar Installer, LLC* (*In re Zhejiang Topoint Photovoltaic Co., Ltd.*), Ch. 15 Case No. 14–24549, Adv. Pro. No. 16–01811, 2017 WL 6513433 at *4–5 (Bankr. D.N.J. Dec. 19, 2017).[2]

The parties proceeded to arbitration before Richard L. Mattiaccio, the arbitrator appointed for that purpose by the International Center for Dispute Resolution of the American Arbitration Association. At a preliminary hearing on June 15, 2018, the parties agreed that the "'Panel had jurisdiction to decide all claims and defenses asserted in this arbitration,' and that '[G&S and Topoint were] proper parties and that no other parties need[ed to] be joined to this arbitration.'" (DE 1-4 at 1–2). The then-current commercial arbitration rules of the American Arbitration Association, incorporated into the Panel Quotation, vested in the arbitrator the power to determine the arbitrability of a dispute:

---

[2] On January 4, 2018 Judge Poslusny entered an order dismissing the adversary proceeding and allowing the parties to pursue their claims in arbitration. (DE 1-3).

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.
>
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(DE 27-2 R-7 at 13).

On October 10, 2018, G&S sought from the arbitrator an order dismissing its own arbitration demand, arguing that based on the Chinese bankruptcy proceeding, Topoint lacked standing because it was not the assignee of Solergy and, therefore, did not have the right to collect assets on Solergy's behalf. (DE 1-4 at 2). G&S sought to introduce the expert testimony of Melody Wang, a Beijing-based law firm partner, that the bankruptcy court had lacked jurisdiction to hear the dispute. (DE 1-4 at 3). It was through Wang's testimony that G&S, for the first time, cited Article 21 of the Enterprise Bankruptcy Law of China:

> After the people's court accepts an application for bankruptcy, a civil action against the debtor can only be filed with the said people's court.

Enterprise Bankruptcy Law of the People's Republic of China (promulgated by the Standing Comm., Tenth Nat'l People's Cong., Aug. 27, 2006, eff. June 1, 2007), ch. II, § 2, art. 21, *translated at* http://www.china.org.cn/china/LegislationsForm2001-2010/2011-02/11/content_21898381.htm.

Topoint chose not to rebut Wang's testimony; according to the company, Wang's testimony addressed issues for which an expert opinion was unnecessary and which could be decided on the evidence already in the record. (DE 1-4 at 3). At the evidentiary hearing, G&S renewed its challenge to the arbitrator's jurisdiction, which, G&S contended, was governed by Chinese law. (DE 1-4 at 3).

5

On April 2, 2019, Topoint notified the arbitrator of a decision issued by Judge Poslusny in a different adversary proceeding in its Chapter 15 case, *Zhejiang Topoint Photovoltaic Co. Ltd. v. Chen* (*In re Zhejiang Topoint Photovoltaic Co., Ltd.*), Ch. 15 Case No. 14-24549, Adv. Pro. No. 16-01873, 600 B.R. 312 (Bankr. D.N.J. 2019) ["*Chen*"]. (DE 1-4 at 4–5). In the *Chen* case, the defendants had presented a similar argument to the one here, namely that Chinese law requires civil actions related to a pending bankruptcy to be adjudicated by the court overseeing the bankruptcy estate. With the parties' consent, Judge Poslusny communicated with the Haining court administering Topoint's estate. After receiving the Haining court's response, Judge Poslusny concluded that it—the Haining court—continued to supervise Topoint's efforts to recover assets and that Topoint was entitled to pursue recovery of overseas assets:

> In this case, the Defendants argue that prior to the Complaint being filed in this case, the Foreign Main Proceeding had closed, and the foreign administrator had been discharged from his responsibilities, and therefore the grounds for recognition have ceased to exist. . . . Among other things, the Letter [to the Chinese bankruptcy court] states:
>
>> First, we would like to know the current status of the Topoint case, if the case remains open, or has been closed. Additionally, if the case is closed, does your court retain jurisdiction . . . will your court oversee the distribution of any assets collected from the Defendants here . . . [?] Second, we would like to know whether the distributions are still being made to the creditors of Topoint. If the representatives are successful against the Defendants and win a money judgment here in the United States, will those funds be distributed to creditors of the liquidated original Topoint . . . [?]
>
> [DE 60] at 2–3. The Reply Letter from the [Chinese bankruptcy court] read:
>
>> The aforementioned bankruptcy . . . was closed by the court order on October 16th, 2014. Nevertheless, "Topoint" is still reporting to this court as to the distribution of any assets

> recovered . . . and we are still overseeing it . . . . The distribution is still being made to the creditors of Topoint . . . . Despite of [sic] the change of the shareholders and the company name . . . "Topoint" remains the same "Topoint" and the bankruptcy and reorganization proceeding has not created a new legal entity . . . all of the creditors remain the owner of the "Overseas Assets". Therefore, any funds . . . recovered from the proceeding pending in your court will be distributed to the creditors of the original bankruptcy . . . not to "Topoint" itself.

[DE] 62.

Based on the assistance received directly from the Foreign Court, the Court concludes that the Foreign Main Proceeding does continue to qualify as a foreign proceeding under section 101(23) of the Bankruptcy Code. The Reply Letter states that despite the Foreign Main Proceeding being "closed," the Foreign Court is still overseeing matters. This is similar to many chapter 11 cases in the United States. Courts often close a Chapter 11 case after confirmation of a plan, but litigation in other forums continue, distributions are made to creditors according to the plan, and the bankruptcy court retains jurisdiction over the case. *See Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997) (Bankruptcy court did not abuse its discretion in reopening closed Chapter 11 case and converting it into Chapter 7 case, where debtors failed to make payments to unsecured creditors as plan required); *In re Johnson*, 402 B.R. 851 (Bankr. N.D. Ind. 2009) (That the debtor had not completed his plan payments or received a discharge did not prevent his case from being fully administered under § 350(a), the case can be closed early to reduce costs and fees being accumulated needlessly.) Indeed, courts retain jurisdiction to oversee disputes, and the case may even be reopened to oversee related adversary proceedings. *See Donaldson*, 104 F.3d at 551.

The Reply Letter states that the Foreign Court is still overseeing matters, including the collection and distribution of assets to creditors of Topoint, and that any assets collected through this adversary proceeding will be distributed to the creditors of Topoint under the supervision of the Foreign Court, in an administrative or judicial proceeding that is collective in nature for the purpose of liquidating or reorganizing Topoint. As such, the Court finds that the Foreign Main Proceeding continues to qualify as a foreign

proceeding under section 101(23); and that this Court still has subject matter jurisdiction over the Main Case, and therefore this adversary proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(P).

. . .

As noted, the Defendants filed a late response which attached an Order from the Foreign Court stating that "civil actions related to the debtor can only be filed with the [court that accepts the bankruptcy petition]." [quoting Enterprise Bankruptcy Law of China, art. 21] [DE] 64. . . . However, even if the Court were to consider the late response, it would not alter the Court's decision for several reasons.

To begin, the Translated Order requiring all actions involving a debtor be filed in the court handling its liquidation is not an uncommon provision in liquidation law, *but usually does not apply to actions involving overseas assets*. For example, section 362 of the Bankruptcy Code, requires any actions against a debtor be brought in the bankruptcy court where the debtor filed its petition. *In re Abreu*, 527 B.R. 570, 578–79 (Bankr. E.D.N.Y. 2015). *However, this does not apply to certain actions which are required to be brought in other courts, particularly those brought by the Debtor, in an attempt to recover assets held in foreign countries. See generally*, 11 U.S.C. § 362; *In re Abreu*, 527 B.R. at 578–79 (Section 362 does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.)

Additionally, Chapter 15 seeks to accomplish the primary goals of an ancillary proceeding through a legal regime that reconciles three related concepts: "recognition of foreign insolvency proceedings; access to judicial proceedings in the United States by duly appointed foreign representatives of foreign proceedings; and availability of specified relief upon recognition of the foreign proceeding." 8 Collier on Bankruptcy ¶ 1501.01 (16th ed. 2018) (emphasis added). Thus, to adopt the Defendants' argument, would be to nullify one of the primary goals of Chapter 15. The Court does not read the Translated Order as stating that the foreign representatives cannot bring any actions in foreign countries, as this could cripple the effectiveness of recognizing any Chapter 15 cases from China.

Moreover, although the Defendants' reply states that "Defendants have only recently been provided with the information," the

> Translated Order is dated June 25, 2018. More importantly, this Court's correspondence with the Foreign Court was after the Translated Order was entered and nothing in the Reply Letter indicates that the adversary proceeding was brought improperly. The Reply Letter states that the Foreign Court is aware that there was a proceeding before this Court to recover assets, and that any funds recovered from such action would be distributed to creditors of Topoint. *Id.* Therefore, the Court finds the Translated Order does not apply to this proceeding.
>
> Lastly, *Topoint's Plan, as translated and submitted to this Court by the Defendants, contemplates actions in foreign countries to recover assets. See* [DE] 24. *As translated by Chen[,] the Plan states that Topoint is responsible for the recovery and distribution of overseas assets and that "Topoint shall actively advance the recovery of the oversea (sic) assets and report the progress to court."* [DE] 24 at 17. *This indicates that the Foreign Court contemplated actions in other countries, that Topoint was responsible for bringing such actions, and that the Foreign Court would be receiving reports on the progress of such actions.* Thus, the Court is not persuaded by the Defendants' argument.
>
> As to the Defendants' remaining arguments, the Court finds, based upon the Reply Letter, that granting Topoint relief and permitting the adversary proceeding to continue will sufficiently protect the interest of creditors, including those located in the United States; and that any assets collected through this adversary proceeding will be distributed to the creditors of Topoint. The Court finds that "Topoint" has standing to bring these actions, based upon the certifications submitted to this Court.
>
> Finally, the Court finds the Defendants failed to establish any basis to revisit the Recognition Order based on the public policy exception of section 1506 of the Bankruptcy Code. In fact, Topoint's actions appear to be consistent with the United States public policy of maximizing assets for distribution to creditors, and not manifestly contrary to public policy.

*Chen*, 600 B.R. at 319–21.

Notwithstanding G&S's objection to his jurisdiction, on May 29, 2019, Arbitrator Mattiaccio issued a final award in favor of Topoint. The award included $4,256,651.50 plus interest accruing at a rate of $880 per day from

9

the thirty-first day after the award was transmitted, until paid or merged into a judgment. (DE 1-4).

## II. DISCUSSION AND ANALYSIS

This Court possesses jurisdiction over this action under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* and under 28 U.S.C. § 1332(a)(2), because this is a civil action between a citizen of a foreign state and a citizen of a U.S. state and the amount in controversy exceeds $75,000, exclusive of interest and costs,

The Federal Arbitration Act evinces a strong presumption in favor of enforcing arbitration awards. *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). Section 9 of the FAA states, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. In short, unless the arbitration award is vacated pursuant to § 10 or modified or corrected under § 11 of the FAA, the award "must" be confirmed.

Arbitration is proverbially a creature of contract. It is of course a prerequisite to confirmation of an award that the parties have agreed to arbitrate. Where "parties insert[] an extremely capacious arbitration clause into [an] Agreement [that] provide[s] that 'all grievances and disputes [over the application or interpretation of [the] Agreement" shall be arbitrated, courts have held that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 399 (3d Cir. 1994) (quoting *AT&T Technologies, Inc. v.*

10

*Comm'ns Workers*, 475 U.S. 643, 650 (1986)); *see also Flintkote Co. v. Textile Workers Union*, 243 F. Supp. 205, 210 (D.N.J. 1965) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85 (1960) ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.").

Assuming the matter was arbitrable in the first place, "[t]he Supreme Court has held that 'the courts play only a limited role when asked to review the decision of an arbitrator.'" *Wilkes Barre Hosp. Co. v. Wyo. Valley Nurses Ass'n PASNAP*, 453 Fed. App'x 258, 260 (3d Cir. 2011) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract . . . . As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco*, 484 U.S. at 36 (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). This is because " arbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), so if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (quoting *Misco*, 484 U.S. at 38).

Section 10(a) of the FAA provides the grounds upon which a district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Further, an arbitration "award is presumed valid unless it is affirmatively shown to be otherwise . . . ." *Brentwood Med. Assocs.*, 396 F.3d at 241.

G&S, having sought and obtained an arbitral forum, belatedly asserted that the Haining court had exclusive jurisdiction over its dispute with Topoint. (DE 26). G&S claims that it did not know at the time it moved to enforce the arbitration clause that Chinese bankruptcy law requires claims associated with the estate to be adjudicated by the court overseeing the bankruptcy:

> At the initial conference with the Arbitrator, G&S's counsel agreed that the Arbitrator had jurisdiction over the claims and defenses asserted in the Arbitration. However, during the course of discovery, G&S learned that under Chinese law, any action related to the Debtors can only be filed in the Haining Court in China where their bankruptcy petition was filed. Specifically, Article 21 of the Enterprise Bankruptcy Law of China provides that "[a]fter the People's Court accepts the bankruptcy petition, civil actions related to the [debtor] can only be filed with the said People's Court which accepts the bankruptcy petition."

(DE 26-1 at 1–2 (citations omitted) (emphasis in original)). However, the U.S. bankruptcy court—specifically with respect to Topoint's bankruptcy—has already rejected that argument after receiving guidance from the Haining court. That court, in fact, had approved a reorganization plan that explicitly allowed Topoint to collect, in foreign courts, assets on behalf of its creditors. The Haining court's interpretation of Article 21 reflects that Chinese bankruptcy courts permit their foreign counterparts to exercise jurisdiction over local disputes to ensure that the assets available to the estate's creditors are

12

maximized. Judge Poslusny further analogized to U.S. bankruptcy law, which likewise allows foreign courts to administer ancillary proceedings, despite the general requirement that one bankruptcy court consolidate the and hear all claims related to the estate. *See* 11 U.S.C. § 362; *In re Abreu*, 527 B.R. at 578–79. The U.S. bankruptcy court was therefore not without jurisdiction to refer the dispute to arbitration. It follows, then, that the arbitrator was empowered to hear the dispute and to render the award in Topoint's favor.[3]

More critically, however, G&S is now collaterally estopped from seeking to vacate the arbitrator's award, because it had the opportunity to litigate the arbitrability issue and declined to do so; indeed, G&S affirmatively sought to enforce the arbitration provision.

In New Jersey,[4] collateral estoppel "represents the 'branch of the broader law of *res judicata* which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" *Tarus v. Borough of Pine Hill*, 189 N.J. 497 (N.J. 2007) (quoting *Sacharow v. Sacharow*, 177 N.J. 62 (N.J. 2003)).

A party asserting collateral estoppel in New Jersey must show that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the

---

[3] Topoint argues that it is significant that the American Arbitration Association's rules for commercial arbitration vest in the arbitrator the power to determine the question of arbitrability and that Arbitrator Mattiaccio determined that he had jurisdiction over the dispute. (DE 27 ¶¶ 11–16). That goes too far. For instance, if the arbitrator had not, as a matter of law, been empowered to hear the case in the first place, his decision on his own jurisdiction would have carried no weight. More significant is the Chinese bankruptcy court's explicit assent to the U.S. bankruptcy court's expression of jurisdiction, *see supra*, the mutual agreement of G&S and Solergy to arbitrate disputes of this kind, *see* (DE 1-1), and G&S's waiver and estoppel by conduct of any objection. Those facts are independently sufficient to dispose of this case.

[4] In the Panel Quotation, the parties agreed that New Jersey law should govern any dispute. (DE 1-1 ¶ 20).

13

> doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (quoting *Twp. of Middletown v. Simon*, 193 N.J. 228 (N.J. 2008)); *see also In re Docteroff*, 133 F.3d 210, 214–15 (3d Cir. 1997) (federal collateral estoppel allows a court to accept facts found by a previous court).

G&S argues that "any action related to the Debtors can only be filed in the Haining Court in China where their bankruptcy petition was filed." (DE 26-1 at 1–2. As discussed, *supra*, the legal premise of the argument is flawed; the Haining court itself did not understand Article 21 to reach so broadly. Instead, the court recognized the jurisdiction of U.S. bankruptcy courts to administer overseas claims by the estate as it sought to maximize the assets available to its creditors.

One cannot be more royalist than the king. In short, the Chinese bankruptcy court does not itself claim the powers that G&S would reserve to it.

So the issue boils down to whether G&S's challenge to the enforceability of the parties' arbitration clause came, or comes, too late. Judge Poslusny's December 20, 2017 opinion leaves no doubt that G&S had the opportunity to litigate the issue to a final judgment:

> Before the Court is the Motion [] of G&S Solar Installers LLC [] to dismiss all claims alleged by Zhejiang Topoint Photovoltaic Co, Ltd. [] in its complaint due to an agreement for mandatory arbitration. [G&S] argues that the Court should enforce the parties' agreement to arbitrate, pointing to state and federal public policies.
>
> . . .
>
> [A]ll of the claims between the parties are subject to arbitration. Additionally, even if there were doubt over the scope of the parties' agreement to arbitrate, courts favor arbitration. . . .
>
> For the foregoing reasons, the Motion is GRANTED. . . .
>
> The Court notes that even if there were a dispute over [issues related to payment], the Court would dismiss to permit arbitration

14

> because there is a public policy in favor of arbitration even when the issue is outside of the scope of the arbitration agreement.

No. 14-24549, 2017 WL 6513433 at *1 & 5. In short, (1) the present issue of the enforceability of the arbitration clause for which G&S and Solergy contracted is identical to the issue that was before Judge Poslusny; (2) G&S actively litigated that issue in the adversary proceeding; (3) Judge Poslusny issued a final merits judgment by granting G&S's motion to enforce the arbitration clause; (4) the order that granted G&S's motion also dismissed the adversary proceeding and allowed the parties to pursue arbitration (DE 1-3 at 2); and (5) G&S was a party in that earlier proceeding. The issue has been judicially decided, and will not be reopened.

In addition, not to put too fine a point on it, G&S sought the arbitral forum, and in the adversary proceeding affirmatively argued that the arbitration clause bound Topoint as Solergy's assignee. At the time, G&S knew about Topoint's parallel Chapter 15 bankruptcy proceedings, which were initiated in support of the Chinese bankruptcy proceeding. Collateral estoppel aside, this constitutes a firm waiver by G&S of its objection to arbitration; a party cannot seek and obtain arbitration, see how things are going, and then object to jurisdiction. *See In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109 (3d Cir. 2012); *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191 (3d Cir. 2010); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007); *Maher v. Northland Grp., Inc.*, No. 17-2957, 2019 WL 3245083 (D.N.J. July 19, 2019), *reconsideration denied*, 2020 WL 1307008 (Mar. 19, 2020).

Given the Federal Arbitration Act's strong policy against relitigating matters resolved in in arbitration, G&S is not entitled to seek enforcement of Article 21. Apart from that contention, there are no allegations that the arbitrator exceeded his power or that the arbitrator failed to review or consider material evidence. The award must be confirmed.

## III. CONCLUSION

For the foregoing reasons, Topoint's motion to confirm the arbitration award (DE 22) is **GRANTED**; G&S's motion to vacate the award (DE 26) is **DENIED**.

A separate order will issue.

Dated: May 15, 2020

/s/ Kevin McNulty

---

**Hon. Kevin McNulty**
**United States District Judge**